UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED ENTERED
LODGED RECEIVED

JUN 1 5 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

SEAN CERTEZA, #411-779

    Plaintiff    )

V.                                   CIVIL ACTION No. TDC-18-1791

WEXFORD HEALTH SOURCES,  )
P.A. JAMISON,
DR. KRISHNASWAMY,          DATE: 6-13-18
RICHARD MILLER, WARDEN
DR. STALLWORTH             )
DR. MEMAR
REGIONAL MEDICAL DIRECTOR,
ADMINISTRATIVE REMEDY COOR.,

    Respondent    )

..................oOo..................

## CIVIL RIGHTS COMPLAINT WITH A JURY DEMAND
### 42 U.S.C. §1983

**COMES NOW** the Plaintiff, Sean Certeza, pro se, and pursuant to 42 U.S.C. §1983, seeking compensatory and pynitive damages, and injunctive relief from violations of his rights to constitutional minimums of medical care by the defendants. Plaintiff seeks an award of $1,000,000.00 in compensation for pain and suffering, and an award of punitive damages and injunctive relief found appropriate by the court and states;

1. Mr. Sean Certeza, #411-779, currently resides at the: ROXBURY CORRECTIONAL INSTITUTION, 18701 ROXBURY ROAD, HAGERSTOWN, MD 21746-1002;

## 2. JURISDICTION AND VENUE :

This Honorable Court has jurisdiction over the Plaintiff's claims of violation of Federal Constitutional rights under 42 U.S.C. §§1331(a) and 1343. This court has jurisdiction over the deliberate indifference claims, as claimed and as enforced under the 8th amendment ban on cruel and unusual punishment, as well as bar against deliberate medical indifference to his serious medical needs. All constitutional rights are extended to the Plaintiff, through the 14th amendment due process clause. This court also has supplemental jurisdiction over Plaintiff's gross-negligence claims under 28 U.S.C. §1367. Venue is based upon 28, U.S.C., §1391.

## 3. PRELIMINARY STATEMENT:

This is a civil rights complaint, filed by Sean Certeza, a state prisoner, for compensatory and punitive damages in the amount of $1,000,000.00, and injunctive relief- with a jury demand- all pursuant to the United States Code, 42 U.S.C. §1983, alleging continuous violations of his constitutional rights protected by the United States Constitution under the 8th and fourteenth Amendments. The defendants are sued in their individual and official capacities, and under the color of law.

-2-

4. **PARTIES** PLAINTIFF:

The Plaintiff is described, supra, at #1;

5. **PARTIES** DEFENDANTS*

(A) WEXFORD HEALTH SOURCES :Wexford Health Sources is the private contractor, hired by the State of Maryland to provide Constitutional minimums of medical treatment. Resident Agents include, but are not limited to:

   WEXFORD HEALTH SOURCES
   501 HOLIDAY DRIVE
   FOSTER PLAZA FOUR
   PITTSBURG, PA 15220

     -AND-

   Law offices of Myers, Rodbell & Rosenbaum, PA
   SUITE 400- BERKSHIRE BUILDING
   6801 KENILWORTH AVENUE,
   RIVERDALE, MARYLAND 20737-1385

5.(B); P.A. JAMISON : P.A. Jamison, at times referenced within this complaint, was employed by Wexford Health Sources. The resident agent described above, should accept service for this defendant. At times in this complaint, Jamison worked at the Roxbury Correctional Institution.

5.(C) DR. KRISHNASWAMY : At times in this complaint, the doctor worked at Roxbury Correctional Institution, 18701 Roxbury Road, Hagerstown, MD 21746. Plaintiff is uncertain if the doctor or the resident agent for Wexford, would accept service at either of the above addresses. If need be, the defendant (Wexford) can provide a service address.

5.(D)RICHARD MILLER: At times referenced within this Complaint, Richard Miller was the Warden of Roxbury Correctional Institution.

5.(E) DR. STALLWORTH: At times referenced in the Complaint, Dr. Stallworth was employed by Wexford, or contracted by Wexford to provide the quality of medical care the 8th and 14th amendment mandates;

5.(F) DR. MEMAR: At times referenced in this Complaint, Dr. Memar provided treatment and services on behalf of Wexford Health Sources;

5.(G) <u>REGIONAL MEDICAL DIRECTOR</u>: Although Plaintiff respectfully requests the permission to freely amend the name of the Regional Medical Director, once that information is made known, this person's responsibility to provide constitutional levels of medical treatment is under fire. This person's acts of omission were attributed to the Regional Medical Director, acting on behalf of Wexford Health Sources;

5.(H) The Administrative Remedy Coordinator was a State employee that directly impacted the ability to raise complaints about the lack of service and medical treatment being provided for Plaintiff's medical problems and afflictions.

## 6. <u>STATEMENT OF FACTS:</u>

In 2015, Plaintiff broke his wrist, at no fault of any of the defendants. When Plaintiff sought medical attention, the injury resorted in seeking medical attention for extreme pain, and surgery which was provided. Follow up treatment included a six-week follow up where the Doctor prescribed "4-6 months, plate & screws will be removed". The pain, and medical treatment found consistent with Plaintiff's health included physical therapy. The need was reviewed February 14, 2016. While Plaintiff was complaining about the need for physical therapy, i.e. 2-14-16, none of the defendants provided prescribed medical treatment- of "removal of the plate and screws in 4-6 months". In fact, when Plaintiff brought it to the attention of qualified medical providers that they had failed to remove the plate or screws in the time prescribed, nothing positive occurred. Defendants continued to blatantly ignore his pleas for removal of the plate and screws. Plaintiff

requested removal of the plate and screws from approximately June, 2016, and July, 2016. This continued to October, 2016 and through to June, 2017. The defendants scheduled a Telemed with the doctor, and instead of removing the plate and screws. Dr. Memar attended. Removal was subsequently approved.

## 7. STATEMENT OF CLAIMS:

(a) Defendants were deliberately indifferent when ignoring my complaints of being constantly in pain;

(b) Plaintiff was forced to persistently submit sick call slips in search of lacking medical treatment;

(c) Defendants were deliberate indifferent when refusing to provide medication for pain that was prescribed by a doctor, which defendants knew was prescribed for pain management;

(d) When Plaintiff complained of the lack of pain management, the Roxbury Correctional Institution's Administrative Remedy Coordinator "stalls","chills" or otherwise delays treatment and action by returning the formal complaint, and asking a number of questions which would be uncovered if the "ARP" were investigated and processed;

(e) Division of Correction staff utilizes, or makes use of an "Informal Inmate Complaint" system.

(f) Usage of the Informal Complaint system was useless, as medical staff only make empty promises of future treatment coming.

-5-

(g) Wexford utilizes a "Release of Responsibility" (DPSCS Form OTS 130-250-1 (Rev. 1/07). When Plaintiff alerted medical staff that he was suffering from a really bad stomach virus, and severe diahrea, Plaintiff was forced to sign off of surgery on his wrist October 19, 2017;

(h) Without warning, excuse or interview, medical staff discontinued pain meds (Tramadol) on January 2, 2017. Dr. Stallworth is guilty of prescribing the medication and failing to follow up, complete a consultation, renew the medication or even inquire into why the medical prescription was not completed by Wexford staff;

(i) As a result of Stallworth's failures, sick-call slips were submitted directly to Stallworth for corrective action, and these complaints included a number of sick call slips, without relief provided with any exigency to alleviate pain that Stallworth and staff knew Plaintiff was suffering from;

(j) Submitting formal ARPs and sick-call slips results in delays as long as seven (7) weeks, in extreme pain, before being called by medical providers.

(k) Defendant Miller found ARP Complaint RCI 0006-17 "meritorious", (concerning the lack of follow-up, lack of consultation, medical staff permitting the medication to expire) et. al. Miller was just as

-6-

deliberately indifferent to Plaintiff's serious medical needs, because Miller did not act upon the emergency request until several weeks expired. Miller acknowledged the complaints, sick call slips, and went as far as to claim that medical providers would "be educated to submit referrals for patients to be seen prior to a medication order's expiration date. Miller failed to acknowledge the pain suffered in the interim.

(l) The glooming fact from the very beginning, is that when Plaintiff broke his wrist, the medical provider failed to provide constitutionally adequate medical treatment bty failing to properly set it, and upon adequate investigation- will show that medical staff simply braced it in unprofessional fashion, and sent Plaintiff right back to the housing unit, leaving the arm disfigured. This initial deliberate medical indifference set the trend for the first two months;

(m) The Regional Medical Director examined documentation and only ordered an xray, and despite the xray technician reporting back to the regional manager and qualified staff, (including defendants that Plaintiff definately needed surgery, because the xray revealed the wrist was certainly broken) Plaintiff was not examined for weeks;

-7-

(n) For the first several months, Plaintiff expressed the unbearable pain and discomfort he was forced to endure- to staff and nurses, without employees of the medical provider, the regional director or the Warden doing anything to alleviate the pain. I was not even taken to the hospital the night I broke my wrist!!

(o) Medical staff could lift a finger to pick up a pen to order "No work status" on the "Medical Alert" form, but could not lift a finger to do something to alleviate pain and make sure doctor's orders are followed up on;

(p) Defendant Miller was deliberately indifferent to Plaintiff's serious medical needs by elevating himself to the level of a doctor, and making medical assessments outside of his expertise. For example, while ignoring the fact a trained doctor determined Plaintiff needed surgery, and also ordered it, the Warden failed to show any concern why I had not timely received the surgery, but instead reflected upon the fact that the methodology recommended and used for immobilization was causing more pain than it was suppose to. Miller's response within ARP #RCI-0446-15, included the preposterous medical assessment by Miller that I "apparently decided that [i] did not need immobilization at some point, and stopped using it."

-8-

(q) After finally receiving surgery at Bon Secours Hospital, defendants refused to provide prescribed medical treatment, i.e. 2-week follow up, examination by medical staff within the facility. The cast remained on longer than necessary, without any scheduled date of removal; nor was I seen by any medical staff, amid requests, for some revelation by nurse or doctor- when the cast would be removed.

(r) Also included in claim (q), is the fact I had to continuously put in for pain meds, and the complaint that my thumb was not working properly, (reflecting a need to see an orthopedic doctor for consultation, and just like previous complaints, Miller found my complaint meritorious. Miller found some unidentified reasons for delay in consultation, inter-alia;

(s) Plaintiff was forced, by sloppy and intentional refusal to provide prescribed medical treatment to overall suffer an alarming amount of pain, as well as be ignored, and to write numerous complaints, and to be even told by the Inmate Grievance Commission that they have no jurisdiction over the medical provider.

(t) The State of Maryland and Warden had authority to order the medical provider to do the job it was paid to do- to provide constitutional minimums of medical treatment, consistent with the 8th and 14th amendments.

(u) The objective component: cruel & unusual conditions reflects eighth amendment violations when prison conditions unquestionably deprive Plaintiff of basic human needs, or the minimal civilized measure of life's necessities;

(v) Defendants deprived Plaintiff of basic life necessities when depriving him medical care, and the deprivation of basic needs elevates to wanton and unnecessary infliction of pain, when defendants knew the unchecked conditions would pose an unreasonable risk of serious damage to Plaintiff's health;

(w) The Eighth amendment's standard of evolving standards of decency" knowing society would not approve of the methodology used to treat Plaintiff for his injury;

(x) The Eighth amendment violation is measured alone or in combination, from the time defendants were informed of the medical issues, and the totality of the circumstances of the inaction of defendants concerning the medical affliction;

(y) The subjective component concerns the cruel and unusual punishment concerning the seriousness of the medical condition, when comparing it to the state of mind of each defendant, as they deprived Plaintiff of proper medical treatment, **"knowing"** Plaintiff would be in pain and suffering continuously;

(z) The issue of "permanant harm" is at issue, even when the permanent harm has not yet occurred.

(aa) The Regional Medical Director is personally liable from having had final policymaking authority with regards to Plaintiff's medical care. That "authority" may certainly balance pecuniary interests, but such interests may not serve as a basis for denial of proper medical treatment. The Director was the final authority concerning the unnecessary delays in the medical provider actually providing "hands-on-treatment" which the Director knew in the times in between, Plaintiff would suffer from the lack of medical care;

(ab) The Medical Director personally made decisions in the instant case, violated Plaintiff's federally protected rights while acting under the color of law, and the set paradigm, standards, rules and policies apply, because the Medical Director's actions of omission and acts of commission were actions under color of state law.

(ac) Wexford is liable because the official policies or customs of the Corporation causes the alleged deprivation of federal rights;

(ad) Liability of supervisory officials is not based upon ordinary principles of "respondeat superior", but rather is premised upon a "recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be causative factors in the constitutional injuries they inflict on Plaintiff, who is committed to their care.

(ae) Defendants and supervisors had active or constructive knowledge that his or her subordinates was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to Plaintiff and other prisoners like him;

(af) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of" the constitutional injury;

(ag) There was an affirmative causal link" between the supervisor's inactions and the particular injuries suffered by the Plaintiff;

(ah) The "medical need" referred to in this case is unquestionably "serious", and arguably concerns permanent injuries and damages that resulted in the diagnosis by a physician as mandating treatment, or alternatively one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

(ai) Defendants not simply "should have known" the risks, the pain. Defendants had actual knowledge, and that knowledge can be proven by circumstantial evidence;

(aj) Defendants were deliberately indifferent to Plaintiff's serious medical needs when defendants knew of, and disregarded the excessive risks to Plaintiff's health;

-12-

(ak) Plaintiff respectfully reserves the right to freely amend the claims for specificity, and to amend to add or delete defendants or claims, based upon verification of pertinent case information.

(al) Deliberate indifference is partially based upon impending harm, easily preventable, and the defendants were directly informed of the persistent pain and constitutional needs;

## RELIEF SOUGHT

A) AS A RESULT OF PAIN AND SUFFERING, PERSONAL HUMILIATION, PLAINTIFF SEEKS $1,000,000.00 IN COMPENSATORY DAMAGES;

B) AS A RESULT OF POLICY, PROCEDURE AND PRACTICE THAT INTERFERES WITH MARYLAND PRISONER'S ABILITY TO EXERCISE A MEDICAL COMPLAINT UNDER THE "PLRA" AND ARP SYSTEM, CONTRARY TO WILSON V. SEITER, PLAINTIFF PRAYS INJUNCTIVE RELIEF;

C) ALL RELIEF THE ENDS OF JUSTICE REQUIRES WHEN THE FACTS ARE EXPOSED.

SIGNED THIS ___13th___ DAY OF ___June___, 2018.

_____
SEAN CERTEZA, #411-779

I declare under penalty of perjury the above is true to the best of my knowledge and beliefs.

_____
SEAN CERTEZA

-13-

FORM TO BE USED BY A PRISONER FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED ___ ENTERED
___ LODGED ___ RECEIVED

JUN 1 5 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

SEAN CERTEZA, #411-779

ROXBURY CORRECTIONAL INST.

18701 ROXBURY ROAD,

HAGERSTOWN, MARYLAND 21746

(Full name, prison identification number and address of the plaintiff)

v.

WEXFORD HEALTH SOURCES,

et. al..

(SEE COMPLAINT*)

(Full name and address of the defendant(s))

Civil Action No. TDC-18-1791
(Leave blank on initial filing to be filled in by Court.)

## COMPLAINT

I. Previous lawsuits

A. Have you filed other cases in state or federal court dealing with the same facts as in this case or against the same defendants?

YES ☐    NO ☒

B. If you answered YES, describe that case(s) in the spaces below.

1. Parties to the other case(s):

Plaintiff: _____

Defendant(s): _____

6

2. Court (if a federal court name the district; if a state court name the city or county): __NOT APPLICABLE__

3. Case No.: __N/A__

4. Date filed: __N/A__

5. Name of judge that handled the case: __N/a__

6. Disposition (won, dismissed, still pending, on appeal): _____

7. Date of disposition: _____

II. Administrative proceedings

A. If you are a prisoner, did you file a grievance as required by the prison's administrative remedy procedures?

YES ☒    NO ☐

1. If you answered YES:

    a. What was the result? __refused on Warden's level; Inmate Grievance claiming it had no jurisdiction__

    b. Did you appeal?

    YES ☒    NO ☐

2. If you answered NO to either of the questions above, explain why: _____

III. Statement of claim
(Briefly state the facts of your case. Include dates, times, and places. Describe what each defendant did or how he/she is involved. If you are making a number of related claims, number and explain each claim in a separate paragraph.)

**SEE ATTACHED COMPLAINT\*\***

IV. Relief
(State briefly what you want the Court to do for you.)

**SEE ATTACHED COMPLAINT**

SIGNED THIS 13 day of, June , 2018

_Sean Curtinga_
(original signature of plaintiff)

**ROXBURY CORRECTIONAL INST.**

**18701 ROXBURY ROAD**

**HAGERSTOWN, MD 21746**
(address of plaintiff)