**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

SEAN CERTEZA,
*Prisoner Identification Number 411-779,*

      Plaintiff,

      v.

WEXFORD HEALTH SOURCES, INC.,
DR. ASHOK KRISHNASWAMY,
ERWIN ALDANA, M.D.,
ASRESAHEGN GETACHEW, M.D.,
MAHBOOBEH MEMARSADEGHI, M.D.,
MONICA STALLWORTH, M.D.,
COLIN OTTEY, M.D., and
DOLPH DRUCKMAN, M.D.,

      Defendants.

Civil Action No. TDC-18-1791

**MEMORANDUM OPINION**

Plaintiff Sean Certeza has filed an Amended Complaint pursuant to 42 U.S.C. § 1983 alleging violations of the Eighth Amendment to the United States Constitution arising from allegedly inadequate medical treatment of a wrist injury sustained while he resided at the Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland. Defendants include Wexford Health Sources, Inc. ("Wexford"); former Wexford employees Dr. Asresahegn Getachew, Dr. Mahboobeh Memarsadeghi, Dr. Monica Stallworth, Regional Medical Director Dr. Erwin Aldana, Regional Medical Director Dr. Colin Ottey, and Acting Regional Medical Director Dr. Dolph Druckman (the "Wexford Individual Defendants") (collectively, with Wexford, the "Wexford Defendants"); and orthopedic surgeon Dr. Ashok Krishnaswamy. Pending before the Court are the Wexford Defendants' Motion to Strike the Amended Complaint, Motion to Dismiss the

Amended Complaint, and Motion to Bifurcate ("the Wexford Defendants' Motion") and Dr. Krishnaswamy's Motion to Strike and/or Dismiss the Amended Complaint ("Dr. Krishnaswamy's Motion"). *See* ECF Nos. 87 and 88. As part of his memorandum in opposition to Defendants' Motions, Certeza has included a Motion for Leave to Amend the Complaint and to Modify the Scheduling Order ("Certeza's Motion"). *See* ECF No. 91. The Motions are fully briefed. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Certeza's Motion will be GRANTED, and Defendants' Motions will be DENIED.

## BACKGROUND

On September 9, 2019, the Court issued a Memorandum Opinion, which is incorporated herein by reference, dismissing Wexford, two prison officials, and Physician's Assistant Crystal Jamison from this case and denying summary judgment to Dr. Memarsadeghi and Dr. Stallworth. *See Certeza v. Wexford Health Sources, Inc.*, No. TDC-18-1791, 2019 WL 4261128, at \*9 (D. Md. Sept. 9, 2019). On the present Motions, the factual background derives from the allegations in the Amended Complaint.

## I.     Factual Background

On May 20, 2015, while incarcerated at RCI, Certeza broke his left wrist playing softball. A nurse examined Certeza at the Office of Inmate Health Services ("OHS"), assessed that Certeza had sustained a radius fracture, applied a splint, and provided pain medication. The next day, Certeza was examined by Dr. Colin Ottey and received an x-ray which revealed an acute fracture. Certeza reported severe pain and was informed that he would need to have a consultation with an orthopedic specialist.

Over the next two weeks, Certeza submitted multiple sick call requests in which he complained of "constant pain and throb[b]ing," requested additional pain medicine, and stated that "[m]y arm has been broke and unseen by a Dr. for 2 WEEKS now. The pain meds are NOT working. PLEASE HELP ME!" Am. Compl. ¶¶ 24-25, ECF No. 68. On June 5, 2015, more than two weeks after the injury, Certeza was examined by Dr. Krishnaswamy, an orthopedic specialist. Dr. Krishnaswamy diagnosed an unstable fracture that would require outpatient surgery consisting of an open reduction internal fixation ("ORIF") procedure with the insertion of a compression plate and screws and the application of a splint. Krishnaswamy specifically noted that this surgery was to be performed as soon as possible so that the wrist would not "heal in malunion." *Id.* ¶ 26.

In additional sick call requests submitted on June 9, 2015 and July 11, 2015, Certeza reported that his pain medication regimen was ineffective, that he had not yet received the necessary treatment, and that he could no longer use his left hand. Nevertheless, Certeza's surgery was not approved by Dr. Getachew, a Wexford physician with decision-making authority over Certeza's medical care, until July 22, 2015—seven weeks after his orthopedic consultation with Dr. Krishnaswamy. Certeza submitted another sick call request on August 17, 2015 in which he reported that his pain level had increased and that he had lost the functionality of two of his fingers.

On September 1, 2015, Dr. Krishnaswamy performed the ORIF surgery, during which he installed hardware, including a compression plate and screws, into Certeza's wrist. Prior to the surgery, Dr. Krishnaswamy observed that Certeza's wrist was already healing in malunion. Dr. Krishnaswamy informed Certeza that he would need to undergo a follow-up procedure to remove the plate and screws within four to six months after the ORIF surgery.

On December 1, 2015, Certeza visited OHS in an attempt to secure the follow-up procedure and spoke with Physician's Assistant Jamison, but no follow-up appointment was made. On May

3

23, 2016, eight months after the ORIF surgery, Certeza visited OHS again and reported that his pain medication was ineffective, that he was having trouble tying his shoes and getting dressed, and that everything he did triggered wrist pain, which at times was at 10 on scale of 1 to 10. Only after Certeza visited sick call again on May 31, 2016 did a medical provider submit a request for an orthopedist to remove the plate from his wrist.

Nevertheless, even after visits with Dr. Stallworth in June and August 2016 during which Certeza continued to report wrist pain and that his follow-up surgery was overdue, the procedure was not approved. On September 20, 2016, Jamison sent an email to the Acting Regional Medical Director, Dr. Dolph Druckman, "to determine if this consult has been addressed." Am. Compl. ¶ 39. A follow-up orthopedic evaluation was not approved until December 14, 2016, 15 months after Dr. Krishnaswamy had identified the need for it.

On January 17, 2017, Certeza had a telemedicine conference with Dr. Krishnaswamy and Dr. Memarsadeghi, another treating physician employed by Wexford, during which Dr. Krishnaswamy again advised that Certeza needed a surgical procedure to remove the hardware, which was causing most of his pain, and that he also needed a Darrach procedure to address the pain and wrist deformity. On January 25, 2017, Dr. Getachew approved the hardware removal and Darrach procedure. Dr. Memarsadeghi informed Certeza of the approval at a sick call visit to OHS two days later, on January 27, 2017. The actual procedure, however, was not scheduled at that time.

On June 13, 2017, Certeza submitted another sick call request in which he again complained about the continuing pain in his wrist and the delay in scheduling the procedure to remove the hardware. It was not until April 12, 2018, however, that Certeza finally had the second surgery to remove the hardware from his wrist—over two and a half years after his original ORIF surgery.

Certeza decided to defer the Darrach procedure to see if the removal of the hardware alone would decrease his pain. Dr. Krishnaswamy later performed the Darrach procedure on April 23, 2019 and performed another surgery on August 23, 2019 to remove additional pins from Certeza's wrist. According to Certeza, as a result of the delays in receiving the necessary surgical procedures, and the inadequacy of the ORIF procedure, he has developed osteoarthritis in his left hand and continues to experience limited movement and functionality in his left hand, muscle atrophy and loss of grip strength in his left hand and arm, chronic pain, throbbing and swelling, and difficulty sleeping.

## II.    Procedural History

On June 15, 2018, Certeza, who was then self-represented and proceeding *in forma pauperis*, filed the original Complaint in this case pursuant to 42 U.S.C. § 1983 asserting that he received constitutionally inadequate medical care for his broken wrist, in violation of the Eighth Amendment. Compl. at 1, ECF No. 1-3. The named defendants were RCI Warden Richard Miller and the "Administrative Remedy Coordinator" (collectively, "the Correctional Defendants"); Wexford, Dr. Memarsadeghi, Dr. Stallworth, Physician's Assistant Jamison, and the "Regional Medical Director" (collectively, "the Original Wexford Defendants"); and Dr. Krishnaswamy. Compl. at 1, ECF No. 1. On October 16, 2018, at the Court's direction, Certeza filed a Supplement to the Complaint by which he cured certain pleading deficiencies identified by the Court. *See* ECF Nos. 3, 4. The Court construed Certeza's Complaint and Supplement together as also including as Defendants RCI Administrative Remedy Procedure Coordinator Patricia Caspar and Regional Medical Director Erwin Aldana.

In cases in which a party proceeds *in forma pauperis*, "[t]he officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d) (2018). Accordingly, on November 29, 2018, the

Court sent the Complaint and Supplement to designated representatives of the Office of the Attorney General of Maryland, Correctional Litigation Unit; the RCI Litigation Coordinator; and Wexford with a request that each recipient inform the Court whether it would accept service on behalf of Defendants affiliated with it. *See* Order at 2, ECF No. 5. As a result, service was accepted on behalf of Defendants Warden Miller, Caspar, Dr. Memarsadeghi, Dr. Stallworth, Jamison, and Wexford, but not on behalf of Dr. Krishnaswamy or the Regional Medical Director. The Court did not issue any follow-up orders to direct service on those Defendants.

In February 2019, the Correctional Defendants and the Original Wexford Defendants each filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (collectively, the "First Motion"). ECF Nos. 18 and 20. In a September 9, 2019 Memorandum Opinion and Order, the Court dismissed the claims against the Correctional Defendants, Wexford, and Jamison but denied summary judgment to Dr. Memarsadeghi and Dr. Stallworth. ECF Nos. 24, 25. In that same Order, the Court directed that the docket be amended to identify Dr. Aldana as a defendant and that counsel for the Original Wexford Defendants enter an appearance on his behalf and respond to the Complaint. The Court did not order service on Dr. Krishnaswamy. Dr. Memarsadeghi, Dr. Stallworth, and Dr. Aldana filed an Answer to the Complaint on September 11, 2019.

In the September 9, 2019 Order, the Court also directed that counsel be appointed to represent Certeza in this case. Over the ensuing year, including through the time period after the onset of the COVID-19 pandemic when court operations were curtailed, the Court identified and appointed three different members of the bar of this Court as *pro bono* counsel for Certeza, only to have each request to be relieved from the appointment. The Court granted each of those requests. *See* ECF Nos. 27, 29, 30, 32, 33, 40. Finally, on October 27, 2020, on the fourth try, the

6

Court appointed Certeza's present counsel. ECF No. 41. On December 16, 2020, the parties filed a joint proposed modification to the discovery schedule, which the Court approved, with a deadline of February 2, 2021 for joinder of additional parties and amendment of pleadings and a deadline of October 15, 2021 for the completion of all discovery. *See* ECF No. 46. On April 20, 2021, Certeza's counsel filed "Plaintiff's Consent Motion to Extend the Time to Serve the Complaint on Defendant Dr. Ashok Krishnaswamy," ECF No. 52, in which counsel noted that Dr. Krishnaswamy, who is not affiliated with Wexford, was "inadvertently not served . . . by virtue of the Court's order" and requested 30 days to serve him because in the course of investigating Certeza's claims, "it has become apparent that Plaintiff still seeks to prosecute his claims against Defendant Krishnaswamy." *Id.* at 3. The Court granted the Motion on April 26, 2021, and Dr. Krishnaswamy was served on May 21, 2021. ECF Nos. 53, 55.

On July 30, 2021, Dr. Krishnaswamy filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(5) for improper service and Rule 12(b)(6) for failure to state a claim. On August 20, 2021, Certeza filed a memorandum in opposition to the motion addressing the issue of improper service, as well as the Amended Complaint, ECF No. 68, adding new claims and defendants. On September 30, 2021, the Court denied Dr. Krishnaswamy's motion as to the issue of improper service and dismissed it as moot on the remaining arguments in light of the Amended Complaint. *See* ECF Nos. 77, 78.

In the Amended Complaint, Certeza added as new defendants Dr. Getachew, Regional Medical Director Dr. Ottey, and Acting Regional Medical Director Dr. Druckman, (collectively, "the New Wexford Defendants") and included additional allegations against Dr. Krishnaswamy and Wexford, the latter of which Certeza seeks to reinstate as a defendant in this case. Overall, in the following numbered counts, Certeza asserts that Defendants violated the Eighth Amendment

7

by acting with deliberate indifference to his wrist fracture based on (1) the failure of the Wexford Individual Defendants to arrange for Certeza to receive timely surgeries on his wrist; (2) Wexford's custom or policy of routinely denying or delaying prisoners' access to necessary medical care; and (3) Dr. Krishnaswamy's failure to perform the medically appropriate and necessary surgical procedure when he conducted the ORIF surgery on September 1, 2015, and failure to ensure that Certeza received the surgical procedures he recommended within the medically necessary time frame.

## DISCUSSION

In their Motions, the Wexford Defendants and Dr. Krishnaswamy both move to strike the Amended Complaint on the grounds that it is procedurally improper.  To the extent that the Amended Complaint is accepted, they seek dismissal of the new claims under Rule 12(b)(6) on the grounds that they are barred by the relevant statute of limitations.  The Wexford Defendants also argue that the new claims should be dismissed for failure to state a claim because (1) Certeza has failed to state a plausible claim of a custom or policy to delay medical care that would support a § 1983 claim under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) (the "*Monell* claim"); and (2) Certeza has not alleged sufficient facts to show that Dr. Getachew, Dr. Ottey, and Dr. Druckman were deliberately indifferent to his medical needs.  Finally, both the Wexford Defendants and Dr. Krishnaswamy seek bifurcation of Certeza's *Monell* claim against Wexford from his other claims as to both discovery and trial and to stay discovery on the *Monell* claim until the other claims are resolved.

Certeza argues that the Amended Complaint was procedurally proper in that he was entitled to amend the Complaint as a matter of right under Rule 15(a)(1) within 21 days of Dr. Krishnaswamy's response to the Complaint. In the alternative, Certeza moves for leave to amend

8

the Complaint and Modify the Scheduling Order for good cause under Rule 15(a)(2) and Rule 16(b)(4). Certeza also argues that the new claims are not barred by the statute of limitations because they relate back to the original Complaint and that the Amended Complaint states plausible claims for relief against Wexford and the New Wexford Defendants.

## I.    Leave to Amend

In their Motions, Defendants first argue that Certeza's Amended Complaint should be stricken because Certeza failed to secure their consent or leave of the Court, and because it was filed after the February 2, 2021 deadline for amendments set forth in the Scheduling Order. Under Rule 15, "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

Although it is undisputed that Certeza did not seek consent or leave of the Court before filing the Amended Complaint, Certeza first argues that because it was filed on August 20, 2021— exactly 21 days after the filing of Dr. Krishnaswamy's July 30, 2021 Motion to Dismiss—the Amended Complaint was properly filed as of right within the 21-day period authorized by Rule 15(a)(1). Courts are split on whether Rule 15(a)(1) authorizes amendment as of right as to all defendants, even those who filed an earlier answer or other responsive pleading, but "the more common approach" is to treat the 21-day time frame for amendment as of right as applying to each defendant independently. *See, e.g, Husbands v. Fin. Mgmt. Sols.*, No. GJH-20-3618, 2021 WL 4339436 at *3 & n.4 (D. Md. Sept. 23, 2021); *Columbia Cas. Co. v. McCabe Trotter & Beverly, PC*, No. 2:20-CV-3680-DCN, 2021 WL 2337188, at *2 (D.S.C. June 8, 2021) (listing cases). The

9

Court need not decide whether Rule 15(a)(1) authorizes the Amended Complaint, which includes new claims against Defendants other than Dr. Krishnswamy, because for the reasons set forth below, the Court will grant Certeza's Motion for Leave to Amend the Complaint and to Modify the Scheduling Order.

Rule 15(a) requires that leave to file an amended complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)). To determine whether a proposed amended complaint would be futile, the Court reviews the revised complaint under the standard used to evaluate a motion to dismiss for failure to state a claim. *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011). "[D]elay alone is not sufficient reason to deny leave to amend." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Relatedly, Rule 16(b)(4) provides that a scheduling order may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

Here, the Court finds no bad faith or undue delay by Certeza. Certeza was self-represented throughout this case and thus could not be expected to have previously made all of the new claims and allegations asserted in the Amended Complaint, his first prepared with the assistance of counsel. The Court determined that it was necessary to appoint counsel to represent Certeza on September 9, 2019, and the delay until present counsel was appointed on October 27, 2020 was the result of declinations by other counsel and cannot be attributed to Certeza. Where Certeza's counsel had to undertake to learn the history and posture of the case, and where the COVID-19 pandemic hindered the ability of attorneys to conduct their work and to communicate with

incarcerated clients such as Certeza, the Court finds no bad faith or undue delay in the filing of the Amended Complaint and good cause to modify the Scheduling Order to permit the Amended Complaint.

As for prejudice, it can result, for example, when "an amendment is offered shortly before or during trial" and it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party." *Johnson*, 785 F.2d at 510. Here, the Amended Complaint is offered at the early stages of the case for Dr. Krishnaswamy and the New Wexford Defendants, and although it would require Wexford to re-enter a case from which it had been dismissed, Wexford did not have to engage in discovery before the original claim against it was dismissed. Indeed, Defendants have not even argued that they would be prejudiced by a grant of leave to amend the complaint. The Court therefore finds no prejudice that would warrant denial of leave to amend. *See Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 119 (4th Cir. 2013) (finding no undue prejudice despite a "three-year period" between the filing of the initial complaint and the amendment where the parties were "still in discovery, and many steps removed from trial").

To the extent that Defendants argue that leave to amend should be denied because the new claims asserted in the Amended Complaint are futile, including the argument that they are barred by the statute of limitations, that argument effectively collapses into Defendants' related arguments that the new claims in the Amended Complaint should be dismissed under Rule 12(b)(6) as barred by the statute of limitations or for failure to state a claim. The Court will address those arguments below. *See infra* part II.B. Because, as discussed below, the new claims are not subject to dismissal, the Court finds that leave to amend is warranted, Certeza's Motion for Leave to Amend the Complaint and to Modify the Scheduling Order will be granted, and the Amended Complaint

11

will be deemed timely filed. Defendants' Motions to Strike the Amended Complaint will be denied.

## II.   Motions to Dismiss

Both the Wexford Defendants and Dr. Krishnaswamy argue that the Amended Complaint fails to state plausible claims against them because Certeza's new claims are time-barred and do not relate back to the original Complaint under Federal Rule of Civil Procedure 15(c). The Wexford Defendants also argue that the Amended Complaint fails to allege facts sufficient to state plausible claims of deliberate indifference to a serious medical need against Wexford, Dr. Getachew, Dr. Ottey, and Dr. Druckman.

### A.   Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

## B.      Statute of Limitations

Both the Wexford Defendants and Dr. Krishnaswamy argue that the new claims in the

Amended Complaint are time-barred and that they do not relate back to the original Complaint.

To determine the statute of limitations for § 1983 claims, courts look to the state law limitations

period for personal injury torts. *Wallace v. Kato,* 549 U.S. 384, 387 (2007). In Maryland, the

general statute of limitations for civil actions is three years from the date of the occurrence. *See*

Md. Code Ann., Cts. & Jud. Proc. § 5-101 (West 2020); *Owens v. Balt. City State's Atty's Office*,

767 F.3d 379, 388 (4th Cir. 2014). Where the second surgery that Certeza sought occurred on

April 12, 2018, the statute of limitations on the new claims appears to have run no later than April

12, 2021, four months before the Amended Complaint was filed. However, Rule 15(c) allows a

party to amend a pleading after the expiration of the statute of limitations if the amendment relates

back to the original pleading. As applicable here, an amendment relates back to the date of the

original complaint when:

> (B) the amendment asserts a claim or defense that arose out of the conduct,
> transaction, or occurrence set out—or attempted to be set out—in the original
> pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a
> claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided
> by Rule 4(m) for serving the summons and complaint, the party to be brought in by
> amendment:
>
> > (i)      received such notice of the action that it will not be prejudiced in
> > defending on the merits; and
> >
> > (ii)     knew or should have known that the action would have been brought
> > against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). When an amendment asserts new claims for legal liability against an

existing defendant, "relation back depends on the existence of a common core of operative facts

uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005). If there

is a factual nexus between the amendment and the original complaint, the amendment can be construed to relate back if "the defendant had notice of the claim and will not be prejudiced by the amendment." *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983); *see also Cannon v. Peck*, __ F.4th __, Nos. 20-2382, 21-1061, 2022 WL 2062370, at *20 (4th Cir. June 8, 2022).

When determining whether an amendment adding a defendant relates back due to the plaintiff's mistake in failing to name a party, naming the wrong party, or misnaming the party, courts assess whether "the rights of the new party, grounded in the statute of limitations, will be harmed if that party is brought into the litigation." *Goodman v. Praxair*, 494 F.3d 458, 471 (4th Cir. 2007). If a party has been given fair notice of a claim within the limitations period and "will suffer no improper prejudice" in defending against the claim, "the liberal amendment policies of the Federal Rules favor relation-back." *Id.*

### 1.    Wexford

Wexford argues that the Amended Complaint's new claim against it, that it is liable under the Eighth Amendment for deliberate indifference to Certeza's wrist injury because of a Wexford custom or policy of delaying medical care, is time-barred and does not relate back to the original Complaint. In fact, the original Complaint alleged that "Wexford is liable because the official policies or customs of [Wexford] cause[d] the alleged deprivation of federal rights." Compl. at 11. Thus, Certeza actually pleaded a *Monell* claim against Wexford in the original Complaint. The Court dismissed the original *Monell* claim against Wexford because Certeza had not provided any facts supporting the assertion that there was such an unconstitutional custom or policy that could have caused the alleged constitutional violation against him. *See Certeza*, 2019 WL 4261128, at *6. Though Certeza's reassertion of this claim includes additional facts relating to the alleged custom or policy, Wexford had notice of it based on the *Monell* claim in the original

Complaint, and that original *Monell* claim and the present claim in the Amended Complaint share the same factual nexus in that they both allege that Certeza (1) broke his wrist while incarcerated; (2) sought medical treatment from Wexford; and (3) needed multiple surgeries to repair his broken wrist; but (4) faced extensive delays in receiving surgery due to the deliberate indifference of Wexford and its employees. *Compare* Compl. at 5-12 *with* Am. Compl at ¶¶ 81-88. Because Certeza's amended *Monell* claim was actually alleged in the original Complaint and shares a common core of operative fact with the original claim, the Court finds that the new claim against Wexford relates back to his original pleading and declines to dismiss this claim as untimely. *See* Fed. R. Civ. P. 15(c)(1)(B); *Mayle*, 545 U.S. at 659.

### 2.   Dr. Krishnaswamy

Like Wexford, Dr. Krishnaswamy argues that although he was named in Certeza's original Complaint, the claims asserted against him in the Amended Complaint do not relate back and therefore must be dismissed as time-barred. Certeza's present claims against Dr. Krishnaswamy include that he acted with deliberate indifference by (1) failing to ensure the timely removal of hardware from Certeza's wrist; and (2) deficiently performing Certeza's ORIF surgery in light of the nature of the injury. Where Certeza's claim for failure to ensure the removal of hardware from his wrist merely repeats the allegations made against him in his original Complaint, it relates back because Dr. Krishnaswamy had notice of it and it pertains to the same common core of operative facts—the series of delayed surgeries described in the original Complaint and the medical records included as a Supplement to the Complaint, which specifically identified Dr. Krishnaswamy as the treating physician. *See* Fed. R. Civ. P. 15(c)(1)(B).

As for Certeza's new claim that Dr. Krishnaswamy acted with deliberate indifference to his medical needs when he performed the ORIF surgery even after it was clear that his wrist had

healed in malunion and therefore required a different surgery, it also arises out of the same common core of operative facts. In his original Complaint and Supplement, which included his medical records, Certeza alleged facts supporting the inference that in June 2015 Dr. Krishnaswamy was aware that his fracture "would heal in malunion" if the ORIF surgery was not performed as "soon as possible," Med. Record Supp. at 19, ECF No. 4-3; that the surgery did not occur until September 1, 2015; that Dr. Krishnaswamy nevertheless conducted the ORIF surgery; and that following the surgery Certeza's "thumb was not working properly" and his wrist had a deformity that caused pain and eventually required another surgery. Compl. at 9; Med. Record Supp. at 44, 46, 55-56, 92. Where Dr. Krishnaswamy's conduct of the September 1, 2015 surgery was part of the allegations in the original Complaint, Certeza's new claim arises "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

The fact that the new claim asserts a different legal theory of liability does not prevent it from relating back. For example, in *Tiller v. Atlantic Coast Line Railroad Company*, 323 U.S. 574 (1945), after a railroad worker was struck and killed by a railroad car, his widow sued under the Federal Employers' Liability Act to recover for his wrongful death and initially alleged "a failure to provide a proper lookout for deceased, to give him proper warning of the approach of the train, to keep the head car properly lighted, to warn the deceased of an unprecedented and unexpected change in the manner of shifting cars." *Id.* at 580-81. In an amended complaint filed after the expiration of the limitations period, she added a new claim under the Federal Boiler Inspection Act for failure to provide the train's locomotive with a rear light. *Id.* at 577, 580-81. The United States Supreme Court held that the amendment related back, and therefore avoided a statute of limitations bar, because both claims "related to the same general conduct, transaction and

16

occurrence which involved the death of the deceased." *Id.* at 581. It related back "even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted." *Mayle,* 545 U.S. at 659 (discussing *Tiller,* 323 U.S. at 581). Likewise, Certeza's new claim of deliberate indifference based on the decision to conduct the ORIF surgery after the wrist was already in malunion, even though based on a different theory and based on certain additional facts arising from the same event, is sufficiently linked to the same transactions and occurrences alleged in the original Complaint so as to relate back. *See Tiller,* 323 U.S. at 581.

Where Dr. Krishnaswamy was aware that Certeza was asserting constitutional violations arising out of the medical care relating to his wrist, for which he was one of the primary medical providers, he was on notice that a claim relating to the surgery could arise. Further, Certeza's original Complaint and Supplement included Dr. Krishnaswamy's operative notes, which provided significant detail about the surgical procedure itself, and Certeza's allegations that following Dr. Krishnaswamy's surgery, Certeza's "thumb [did] not work properly" and his wrist had a deformity that caused pain and eventually required another surgery. *See* Med. Record Supp. at 42-44, 46, 55-56, 92. Finally, though he has claimed possible prejudice, Dr. Krishnaswamy has not provided a convincing basis to conclude that he would be actually prejudiced in defending this claim. Accordingly, Dr. Krishnaswamy's Motion to Dismiss will be denied as to Count 3 of the Amended Complaint. *See Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir. 1983) (holding that prior "Title VII proceedings should have put defendants on notice of the possibility that [plaintiffs] might bring claims under the Civil Rights Act" such that the "amendment did relate back and the claims asserted therein are not time-barred"); *Mayle,* 545 U.S. at 664 ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."). *Cf. Cannon,* 2022 WL 2062370, at *20 (holding that a proposed amendment could

17

not relate back where "[t]he complaint does not mention the August 28 email, nor does it reference or even imply the existence of *any* defamatory publication by [d]efendants" that could give rise to plaintiffs' newly added defamation claim).

### 3. New Wexford Defendants

As for Certeza's claims against the New Wexford Defendants, which allege that Dr. Getachew, Dr. Ottey, and Dr. Druckman participated in the undue delay in providing treatment and surgery for Certeza's wrist injury, the Court notes that the original Complaint listed as a defendant the "Regional Medical Director"—a position held by both Dr. Ottey and Dr. Druckman during the relevant time period—and asserted that both the Regional Medical Director and unnamed "employees" of Wexford failed to act to address his medical needs. *See* Compl. at 1, 8. For example, Certeza alleged in the original Complaint that "[t]he Regional Medical Director examined documentation" relating to his injury but "only ordered an x-ray" in response, and despite results showing that he "definitely needed surgery," Certeza "was not examined for weeks." *Id.* at 7.  Certeza further alleged that for "the first several months, [he] expressed the unbearable pain and discomfort he was forced to endure . . . without employees of the medical provider, [or] the regional director . . . doing anything to alleviate the pain," and that "[m]edical staff . . . could not lift a finger to do something to alleviate pain and make sure doctor's orders [we]re followed up on." *Id.* at 8. Finally, Certeza alleged that he was forced to "suffer an alarming amount of pain, as well as be ignored," due to "sloppy and intentional refusal to provide prescribed medical treatment." *Id.* at 9.  As to the Regional Medical Director in particular, Certeza asserted that "the Director was the final authority concerning the unnecessary delays," "personally made decisions in the instant case," and "knew in the times in-between [that Certeza] would suffer from the lack of medical care." *Id.* at 11.

18

These allegations make clear that Certeza was asserting a claim against the Regional Medical Director and other Wexford employees who participated in the approval process for his medical treatment at RCI from 2015 to 2018, even if he did not know the specific names of the relevant Regional Medical Directors or other responsible Wexford employees. Accordingly, the claims against Regional Medical Directors Dr. Ottey and Dr. Druckman are fairly construed as claims that simply change the party or "naming of the party against whom the claim is asserted." *See* Fed. R. Civ. P. 15(c)(1)(C). Likewise, where Dr. Getachew is alleged to have been directly involved in the approval process for Certeza's medical treatment relating to his wrist, the claim against him is effectively one that changes the name of a party for a claim asserted in the original Complaint. *See id.*

Further, the allegations in the original Complaint, and the course of conduct since its filing, demonstrate that the New Wexford Defendants were on notice of the action, such that there is no prejudice, and "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." *Id.* Notably, in Wexford's original Motion to Dismiss, or in the Alternative, for Summary Judgment, filed within the period provided by Rule 4(m) for service and by the same counsel now representing the New Wexford Defendants, Wexford, the employer of the New Wexford Defendants, explicitly noted the involvement of Dr. Getachew and Dr. Ottey in Certeza's medical care and that the approval of care by the Regional Medical Director was at issue, such that it is reasonable to conclude that the New Wexford Defendants were on notice within the original service period that they were subject to suit based on these incidents but for Certeza's inability to identify them. *See* First Wexford Mot. Dismiss at 2-3, ECF No. 18-3; *see also* Med. Records at 9, 30, 61, 90, First Wexford Mot. Dismiss Ex. 1, ECF No. 18-4; *Goodman*, 494 F.3d at 471 (holding that when the new party "has been

19

given fair notice of a claim within the limitations period and will suffer no improper prejudice in defending it, the liberal amendment policies of the Federal Rules favor relation-back"). Where the New Wexford Defendants have not articulated a persuasive basis to conclude that the Amended Complaint results in improper prejudice to them in mounting a defense, the Court finds that the claims against them relate back to the original Complaint and will not dismiss them as untimely.

### C.     Failure to State a Claim

Beyond the statute of limitations argument, the Wexford Defendants argue that the allegations against them in the Amended Complaint fail to state plausible claims for relief against them.    In order to state an Eighth Amendment claim arising from inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This standard requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for

the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

### 1.    Wexford

In its Motion, Wexford seeks dismissal of the claim against it on the grounds that the allegations in the Amended Complaint fail to state a plausible claim for relief. At the time of the relevant events, Wexford was a private health care provider under contract with the Maryland Department of Public Safety and Correctional Services ("DPSCS") to provide primary health care services for prisoners in Maryland state prisons. A private corporation in such a role may be held liable for constitutional violations under § 1983 but only, as required for § 1983 claims against a municipal government, if the deprivation of federal rights was the result of a custom or policy of that entity. *Austin v. Paramount Parks*, 195 F.3d 715, 727-28 (4th Cir. 1999); *see Monell*, 436 U.S. at 691 (holding that municipalities can be liable under § 1983 only if "action pursuant to official municipal policy of some nature caused a constitutional tort"). To prove a *Monell* claim, a plaintiff must (1) identify the specific policy or custom; (2) fairly attribute the policy and fault for its creation to the municipality or relevant entity; and (3) find the necessary "affirmative link" between the identified custom or policy and the specific violation of a federal right. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). A policy or custom need not "directly command[] or authorize constitutional violations" if it can be established it was the proximate cause of the violation. *Id.* at 1387-88.

In resolving the First Motion, the Court dismissed the *Monell* claim against Wexford asserted in the original Complaint for failure to state a claim because Certeza's original Complaint, which was drafted without the assistance of counsel, failed to allege any facts in support of the existence of a custom or policy to delay or deny medical care with deliberate indifference. Now that Certeza has the assistance of counsel, his more detailed allegations in the Amended Complaint of a custom or policy must be considered. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (stating that "[p]laintiffs whose actions are dismissed are free to subsequently move for leave to amend pursuant to Federal Rule of Civil Procedure 15(b) even if the dismissal is with prejudice").

In Count 2, Certeza asserts that Wexford knowingly maintained "customs and policies [that] included routinely delaying prisoners' necessary and important medical care, including by delaying prisoners' visits to outside physicians and by failing to respond urgently to prisoners' emergent medical needs," and that the Wexford Individual Defendants "acted pursuant to these customs and policies in delaying Plaintiff's required care, failing to ensure that Plaintiff received necessary care, and in failing to respond to Plaintiff's serious medical need with sufficient urgency to prevent further injury." Am. Compl. ¶¶ 85-87. The Amended Complaint sets forth specific facts to support the *Monell* claim, including identifying Wexford's "Collegial Review process," a multi-level review process applied to all requests for outside consultations, even emergency ones, as a specific policy by which Wexford "injects delay into every step of the process of providing prisoners with necessary and urgent specialty medical care." *Id.* ¶ 54-55. Certeza also alleges a direct link between this policy and the unacceptably long delay in the provision of his time-sensitive surgeries by describing the role of the Regional Medical Director in the Collegial Review process and the failure of the various Defendants who served as Regional Medical Director to

arrange for timely approval even while many had direct knowledge of his urgent medical needs. *See id.* ¶¶ 56-57. As evidence of the existence of such a broad policy and its adverse impact, Certeza references multiple, similar incidents of delay of necessary medical procedures and inadequate prison medical care in Maryland and in other prisons across the United States at which Wexford has had the contract to provide medical services, as well as adverse findings, terminations of contracts, and penalties imposed against Wexford by Maryland and other states based on inadequate medical care. *See id.* ¶¶ 58, 62-67, 69-71.

Wexford argues that where the DPSCS had over 23,000 inmates at the time of Certeza's wrist injury, the discussion of six specific incidents of delay and inadequate provision of medical care, and the citation to several reports referencing inadequate medical care by Wexford in Maryland and other states, is insufficient to show the type of widespread, flagrant violations required to succeed under *Monell*. However, the United States Court of Appeals for the Fourth Circuit has expressly recognized that while "[t]he substantive requirements for proof of [*Monell*] liability are stringent," "section 1983 claims are not subject to a heightened pleading standard paralleling the rigors of proof demanded on the merits." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994) (quoting *Leatherman v. Tarrant Cnty.*, 507 U.S. 163, 164 (1993)). Under this pleading standard, "[t]here is no requirement that [plaintiffs] . . . plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Id.* at 339. Moreover, in many cases in which a plaintiff references other incidents of alleged constitutional violations, there is no formal policy asserted to be unconstitutional or unconstitutionally applied; rather the plaintiff seeks to establish an official custom by showing a pattern or similar conduct. *See, e.g.*, *Spell*, 824 F.2d at 1391-92, 1395. Where Certeza has identified a specific custom or policy in the Collegial Review process,

23

articulated a connection between this policy and the allegedly unconstitutional acts or omissions

of the Regional Medical Directors, and then also has provided specific facts relating to similar

incidents of delayed medical care by Wexford, the Court finds that he has stated a plausible *Monell*

claim. Accordingly, the Wexford Defendants' Motion to Dismiss will be denied as to Count 2 of

the Amended Complaint.

### 2. New Wexford Defendants

The New Wexford Defendants argue that Certeza has failed to state a plausible claim that

they violated the Eighth Amendment through deliberate indifference to his serious medical needs

by failing to provide him with necessary surgeries on his wrist in a timely manner. In its

Memorandum Opinion on the First Motion, the Court held that Certeza had stated a plausible

Eighth Amendment deliberate indifference claim and denied summary judgment to two other

physicians involved in his medical care, Dr. Stallworth and Dr. Memarsadeghi. As the Court stated

in that ruling in relation to those "Medical Defendants":

> It cannot fairly be disputed that Certeza's wrist injury, which caused serious,
> ongoing pain and has resulted in a likely permanent deformity, constituted an
> objectively serious medical need. . . . Where Dr. Krishnaswamy had originally
> noted that delays in surgery could jeopardize the full healing of Certeza's wrist, it
> could reasonably be inferred that the extensive delays contributed to permanent
> deformity in his wrist. . . . Where Dr. Krishnaswamy's recommendations were
> consistent, clearly documented in the medical records, were later corroborated by
> Dr. Manning, and have not been seriously challenged, it would be fair to infer [that]
> the Medical Defendants had actual knowledge of the risk to Certeza of inaction for
> much of the multi-year period of inaction. Where the Medical Defendants
> nevertheless failed to act upon that knowledge and instead allowed interminable
> delays in treating an injury for which lack of immediate attention was known to
> risk permanent injury, the Court concludes that there remains a genuine issue of
> material fact on the issue of deliberate indifference.

*Certeza*, 2019 WL 4261128, at *7-8.

The same analysis applies to the New Wexford Defendants. First, Certeza alleges that, like

Dr. Stallworth, Dr. Ottey personally examined his injured wrist on May 21, 2015 and that, despite

being aware at that point of his injury and significant wrist pain, Dr. Ottey failed to ensure that he received the medical care he needed. Certeza alleges that he told Dr. Ottey that "on a scale of ten, his pain level was at ten," that an x-ray confirmed that he had a fractured wrist, and that he was told during that visit that he "would need to have a consultation with an orthopedic specialist," but that consultation did not occur until June 5, 2015, at which Dr. Krishnaswamy stated that he needed surgery "as soon as possible" because it "will heal in malunion" without it. Am. Compl. ¶¶ 23, 26. Although that initial time period in arranging for the consultation alone may not have constituted deliberate indifference, Certeza then had to wait an additional three months before his first surgery, during which time he submitted multiple sick call requests reporting severe pain and the inability to use his wrist. Because Dr. Ottey was personally involved in Certeza's treatment and could be inferred to have knowledge of the severity of his injury, and was also the Regional Medical Director in 2015, Certeza has plausibly alleged that Dr. Ottey "had the ability or played a part in the decision to authorize, deny, or delay [Certeza]'s necessary medical care" but failed to ensure that Certeza received the surgery in time to avoid permanent harm to his wrist. *Id.* ¶ 17.

Second, as to Dr. Getachew, Certeza alleges that because he approved Certeza's ORIF surgery on July 22, 2015, at that point he had subjective knowledge of his immediate need for surgery, and that despite this knowledge, he too failed to ensure that Certeza received it in a timely manner. In addition, Certeza alleges that Dr. Getachew was personally aware of his need for the ORIF surgery, and necessarily knew that Certeza needed to have the hardware in his wrist removed within four to six months of this initial surgery, yet he failed to approve Certeza's hardware removal surgery and Darrach procedure until over 18 months later, on January 25, 2017. Faced with allegations that Dr. Getachew was involved in the approval process and had personal knowledge of Certeza's surgical needs, and drawing all inferences in favor of the nonmoving party,

the Court cannot deem implausible Certeza's allegation that Dr. Getachew "actually used the authorization process to delay Plaintiff's necessary medical care." *Id.* ¶ 16. The Motion will be denied as to Dr. Getachew.

Third, as to Dr. Druckman, he held the position of Acting Regional Medical Director at RCI from 2015 to 2017, during which time Certeza plausibly alleges that he also "had the ability or played a part in the decision to authorize, deny, or delay Plaintiff's necessary medical care." *Id.* ¶ 18. Beyond the fact of Dr. Druckman's position, Certeza alleges facts supporting the conclusion that Dr. Druckman had actual knowledge of his need for the second surgery. Specifically, he alleges that on September 20, 2016, Jamison sent an email to the Regional Medical Director, regarding Certeza's May 2016 reports of severe pain and request for surgery to remove the hardware in his wrist, "to determine if this consult has been addressed," *id.* ¶ 39, but Certeza was not approved to have a follow-up orthopedic evaluation until December 14, 2016, over a year after the original ORIF surgery, and did not actually receive the necessary second surgery until April 12, 2018, more than 18 months after the first surgery. Viewing these facts in the light most favorable to the nonmoving party, where Certeza has alleged facts showing that Dr. Ottey, Dr. Getachew, and Dr. Druckman all had actual knowledge of his wrist injury and his need for timely surgery, and they all were in positions with the ability or authority to ensure that he received such surgery, the Court finds that their failure to arrange for the completion of the necessary surgeries over the inexplicably lengthy almost three-year period after the initial injury could support a claim of deliberate indifference to a serious medical need. The Wexford Defendants' Motion will be denied as to the request for dismissal of the claims against the New Wexford Defendants in Count 1 of the Amended Complaint.

26

### III. Bifurcation

Finally, Defendants urge the Court to bifurcate Certeza's *Monell* claim from his other claims and to stay discovery as to *Monell* claim. Under Federal Rule of Civil Procedure 42(b), the Court has discretion to "order a separate trial of one or more separate issues" to promote "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Further, "Rule 26 vests the trial judge with broad discretion . . . to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1988); *see* Fed. R. Civ. P. 26.

Citing *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318 (D. Md. 1991), Defendants argue that the prospective burden of *Monell* discovery, combined with the usual practice within this District, warrants bifurcating Certeza's *Monell* claim for discovery and for trial. Although bifurcation of discovery could be considered in an ordinary case, where this case was filed in June 2018 and has already faced significant delays due to the difficulty of appointing counsel to represent Certeza and in effectuating proper service as to all Defendants, bifurcation of discovery would impose an unacceptable delay on the full completion of this case. Moreover, where the allegations of a custom and policy of delay by Wexford relate to the same approval process involving Regional Medical Directors that is central to Certeza's claims against the Wexford Individual Defendants, there is likely more overlap in the evidence relating to the *Monell* claim and Certeza's other claims than was present in *Marryshow*, such that it would be "less, rather than more, efficient to bifurcate" the case and stay discovery at this juncture. *See Marryshow*, 139 F.R.D. at 320 n.6. Accordingly, Defendants' Motion to Bifurcate will be denied as to the issue of discovery. The Court will defer the question of bifurcation of Certeza's *Monell* claim for trial until after discovery has been completed.

27

## CONCLUSION

For the foregoing reasons, Certeza's Motion for Leave to Amend the Complaint and to Modify the Scheduling Order will be GRANTED, and the Amended Complaint will be deemed timely filed. Defendants' Motions to Strike or Dismiss the Amended Complaint or to Bifurcate will be DENIED. A separate Order shall issue.

Date:  July 11, 2022

THEODORE D. CHUANG
United States District Judge

28